1

2

3

4

5

6

7

JS-6

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11     Gabriella Hernandez,

12              Plaintiff,

13     v.

14

15     The Container Store, Inc.,

16              Defendant.

Case No. 2:23-cv-05067-HDV-RAO

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT [DKT. NO. 19]**

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.    INTRODUCTION**

2    Plaintiff Gabriela Hernandez brings this lawsuit against Defendant The Container Store, Inc.,

3    a retailer of container products, asserting it violates the Video Privacy Protection Act ("VPPA").

4    Before the Court is Defendant's Motion to Dismiss ("Motion"), which seeks dismissal of Plaintiff's

5    First Amended Complaint on the grounds that it fails to allege adequately three elements of a VPPA

6    claim: (1) that Defendant is a "video tape service provider," (2) that Plaintiff is a "consumer," and

7    (3) that Defendant disclosed "personally identifiable information."  The Court finds that the

8    Complaint cannot state a VPPA claim, and for that reason dismisses the First Amended Complaint in

9    its entirety without leave to amend.

10    **II.    BACKGROUND**

11    Defendant is a Texas corporation that operates retail stores and an e-commerce website

12    selling container products and associated goods.  First Amended Complaint ("FAC") ¶ 5 [Dkt. No.

13    17].  Plaintiff is a consumer privacy advocate who watched a video titled "Custom Spaces" on

14    Defendant's website in 2023.  *Id.* ¶ 4.  As alleged, Defendant tracks such "Page View Events" and

15    videos on its website and reports certain information to TikTok, including the video title, ad

16    information, the time the page was viewed, the User's IP address, and the user's device make,

17    model, operating system, and browser information.  *Id.* ¶¶ 14-15, 20, 27.  On May 18, 2023, Plaintiff

18    initiated this putative nationwide class action asserting a violation of the Video Privacy Protection

19    Act, 18 U.S.C. §§ 2710, et seq. Defendant filed the present Motion on August 8, 2023, and it is fully

20    briefed.  [Dkt. Nos. 19, 22, 26].  On November 16, 2023, the Court heard oral argument and took the

21    Motion under submission.  [Dkt. No. 32].

22    **III.    LEGAL STANDARD**

23    Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim

24    upon which relief may be granted.  "To survive a motion to dismiss, a complaint must contain

25    sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

26    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

27    570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

28    court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

556 U.S. at 678.  Only where a plaintiff fails to "nudge[] [his or her] claims … across the line from conceivable to plausible[,]" is the complaint properly dismissed.  *Id.* at 680.  While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## IV.   DISCUSSION

Congress enacted the VPPA in 1988 to "preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials."  S. Rep. 100-599 at 1 (1988); *see also Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) ("The VPPA was enacted in 1988 in response to the Washington City Paper's publication of then-Supreme Court nominee Robert Bork's video rental history.").  The Act provides that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person …." 18 U.S.C. § 2710(b)(1).  To plead a claim under the VPPA, a plaintiff must plausible allege that: (1) the defendant is a "video tape service provider," (2) the defendant disclosed "personally identifiable information concerning any [consumer]" to "any person," (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by Section 2710(b)(2)." *Mollett*, 795 F.3d at 1066.

### A.  Video Tape Services Provider

The VPPA defines a "video tape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ." 18 U.S.C. § 2710(a)(4).  "[F]or the defendant to be 'engaged in the business' of delivering video content, the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose." *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017); *see id.* ("When used in this context, 'business' connotes 'a particular field of endeavor,' i.e., a focus of the defendant's work.").  Indeed, courts in the Ninth Circuit have recognized consistently that delivering video content must be central to the defendant's business or product for the VPPA to

apply.  *See, e.g., Carroll v. Gen. Mills, Inc.*, No. 23-cv-1746-DSF-MRW, 2023 WL 4361093, at *4 (C.D. Cal. June 26, 2023) ("The videos on the website are part of Defendant's brand awareness, but they are not Defendant's particular field of endeavor.  Nothing suggests that Defendant's business is centered, tailored, or focused around providing and delivering audiovisual content."); *Cantu v. Tapestry, Inc.*, No. 22-cv-1974-BAS-DDL, 2023 WL 6451109, at *4 (S.D. Cal. Oct. 3, 2023) ("That the videos are used for marketing purposes, as admitted in the SAC, demonstrates that they themselves are not Defendant's product and therefore are only peripheral to Defendant's business.").  Applying this standard, the Court finds that the Complaint does not plausibly allege that Defendant is a video tape service provider under the VPPA.  The Complaint alleges Defendant is a "a for-profit Texas corporation that operates retail stores and an e-commerce website selling container products and associated goods."  Complaint ¶ 5.  Plaintiff also alleges that "Defendant owns, operates, and/or controls the Website and offers videos to watch through the Website."  *Id.* ¶ 8.  The Complaint goes on to state:

> Defendant has developed its Website so that it is significantly tailored to deliver video content to consumers. The delivery of video content to consumers on the Website is a core component of the Website, which is a critical marketing channel used by Defendant to attract potential, new customers and retain existing customers with appealing video content.  Defendant has incurred significant expense to design and maintain its Website to deliver video content to consumers.…  Defendant produces and uses its own line of videos to market the products offered for sale on its Website.… .  Hosting and monetizing video content is a key part of Defendant's business model, as it uses the videos as a "trojan horse" to collect and disclose viewers' PII so it can later retarget them for advertisements.

*Id.* ¶¶ 42, 45, 46.  Plaintiff's references to Defendant's "monetizing" the hosted "video content" do not include allegations that Defendant sells such content or even receives remuneration from TikTok but refer only to Defendant's ability to "retarget" video viewers with future advertisements for Defendant's products.  *Id.* ¶¶ 21, 46.  In Plaintiff's own words, the videos are aimed toward the sale of Defendant's products and are a marketing tool to promote Defendant's brand and website, nothing more.  Plaintiff's contentions about the "significant expense" incurred in producing "numerous" pre-recorded videos, *id.* ¶¶ 43–44, do not transmute this "marketing channel" into the central focus of Defendant's business.  Defendant's videos, including the "Custom Spaces" video that Plaintiff viewed, market Defendant's goods; they are not themselves the goods on offer.  It is not plausible to

4

allege, as Plaintiff does here, that Defendant is "engaged in the business" of delivering video content by including on its website "pre-recorded videos," such as the "Custom Spaces" video, that "market the products offered for sale on its website." *Id.* ¶¶ 4, 44–45.  The Complaint fails to allege how these "videos used for marketing purposes" are central, rather than "peripheral to Defendant's business."  *See Cantu v. Tapestry, Inc.*, No. 22-cv-1974-BAS-DDL, 2023 WL 6451109, at *4 (S.D. Cal. Oct. 3, 2023).  Nor could any plausible amendment remedy this fatal deficiency.

### B. Consumer

The VPPA only applies to "consumers" defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).  "In the statute's full context, a reasonable reader would understand the definition of 'consumer' to apply to a renter, purchaser or subscriber of audio-visual goods or services, and not goods or services writ large." *Carter v. Scripps Networks, LLC*, --- F. Supp. 3d ---, No. 22-cv-2031-PKC, 2023 WL 3061858, at *6.  (S.D.N.Y. Apr. 24, 2023).  Thus, as numerous courts have recognized, the VPPA provides only "for an action by a renter, purchaser [or] subscriber *of audio visual materials*, and not a broader category of consumers." *Id.* (emphasis added); *see also Salazar v. Glob.*, No. 3:22-CV-00756, 2023 WL 4611819, at *11 (M.D. Tenn. July 18, 2023) (holding that a "subscriber" is only a "consumer" under the VPPA "when they subscribe to audio visual materials"); *Tawam v. Feld Ent. Inc.*, No. 23-CV-357-WQH-JLB, 2023 WL 5599007, at *5 (S.D. Cal. July 28, 2023) (holding that complaint did not plead "the existence of a nexus between the [plaintiff's] alleged subscription and the video content at issue").

Plaintiff alleges that she is a "purchaser" under the VPAA because she "has purchased products from Defendant in the past."  Complaint ¶ 29.  Plaintiff does not allege that she purchased any "audio-visual goods or services" from Defendant, and indeed alleges that the "products" Defendant sells are "container products and associated goods." *Id.* ¶ 29.  Plaintiff therefore cannot plead any "nexus" between her purchase and the "video content at issue." *Cf. Tawam*, 2023 WL 5599007 at *5.

Plaintiff argues that the litany of decisions recognizing a nexus requirement are wrong, and in any event distinguishable.  Plaintiff's contrary interpretation focuses on the supposed "plain

1  meaning" of the isolated and undefined term "purchaser."  Opp. at 9.  But "[i]n interpreting a statute
2  … courts are not to construe each phrase literally or in isolation."  *Hunthausen v. Spine Media, LLC*,
3  No. 3:22-cv-1970-JES-DDL, 2023 WL 4307163, at *3 (S.D. Cal. June 21, 2023) (quoting *Carter*,
4  2023 WL 3061858, at *5).  And in context, "a reasonable reader would understand the definition of
5  'consumer' to apply to a … purchaser … of audio-visual goods or services, and not goods or
6  services writ large."  *Id.*  Plaintiff's efforts to distinguish this line of cases focus on the fact that the
7  "consumers" therein were alleged to be subscriber-consumers, rather than purchaser-consumers.
8  Opp. at 12-14; *see* 18 U.S.C. § 2710(a)(1) ("consumer" means "any renter, purchaser, or subscriber
9  of goods or services from a video tape service provider").  But *Carter* and similar cases explain
10  without qualification that that the term "consumer"—the umbrella term used in the VPPA's
11  operative provision—applies only to a "renter, purchaser or subscriber of audio-visual goods or
12  services."  *Carter*, 2023 WL 3061858, at *6.  Nor does Plaintiff offers any persuasive rationale for
13  requiring a nexus between a "subscriber" and the audiovisual content at issue, but not between a
14  "purchaser" and that same content.

15      The Court finds that Plaintiff's allegation that she purchased Defendant's products in the
16  past, without alleging that she purchased any audio-visual goods or services from Defendant, is
17  inadequate to allege that she is a "purchaser" within the meaning of the VPPA.  Having failed to
18  plausibly allege that Plaintiff is a "purchaser" of Defendant's video services, the Complaint does not
19  adequately plead that she is a "consumer" under the VPPA.

20
21
22
23
24
25
26
27
28

1    **V.    CONCLUSION**

2           Plaintiff's FAC fails to state a VPPA claim on two independent grounds.  Because Plaintiff

3    has already amended the complaint once as a matter of course, *see* [Dkt. Nos. 1, 17], and since the

4    fatal deficiencies cannot plausibly be remedied by further pleading, the Court finds that amendment

5    would be futile and dismisses the First Amended Complaint without leave to amend.  *See Kroessler*

6    *v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020).[1]

7

8    Dated:  January 3, 2024

9                                                                    _____

10                                                                              Hernán D. Vera
                                                                       United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   _____

28   [1] Because the FAC fails to state a claim on the grounds discussed above, the Court does not reach
     the argument regarding "personally identifiable information" briefed by the parties.